UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| GREGORY MODNY, individually and on behalf of all others similarly situated,<br><br>                                Plaintiff,<br><br>       -against-<br><br>FOLEY HOAG LLP, and GARY LESHINSKI, individually and in his official capacity,<br><br>                              Defendants. | Case No.: 1:24-cv-5586<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

_____

        Plaintiff, GREGORY MODNY ("Plaintiff" or "MODNY"), individually and on behalf of all others similar situated, by his attorneys at O'Connell Law, PLLC, brings this action against FOLEY HOAG LLP ("FOLEY HOAG"), and GARY LESHINSKI ("LESHINSKI"), individually and in his official capacity, (hereinafter referred to collectively as "Defendants"), respectfully alleges as follows upon information and belief:

## PRELIMINARY STATEMENT

    1.     MODNY, individually and on behalf of all others similar situated, brings this action to recover damages for egregious violations of wage and hour laws  arising out of Plaintiff's employment while working at FOLEY HOAG LLP. Plaintiff also brings claims of discrimination, retaliation, and other state and city laws.

    2.     Defendants have deprived Plaintiff and his co-workers of payment for all of their time worked and overtime pay since at least in or around July 11, 2022 in violation of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, et seq. ("FLSA"). Plaintiff further allege that, under the FLSA, Plaintiff is entitled to recover from Defendants: (1) unpaid wages and wages and deducted wages; (2) liquidated damages; (3) prejudgment and post-judgment interest; and (4) attorneys' fees and costs.

3.      Defendants have deprived Plaintiff of payments due since at least in or around July 11, 2022 in violation of the New York Labor Law ("NYLL"). Plaintiff further alleges that under the NYLL, Plaintiff is entitled to recover from the Defendants: (1) unpaid wages; (2) deducted wages; (3) damages for late payment of wages; (4) damages for violations of notice and record keeping requirements under NYLL §195(1) and (3); (5) statutory penalties; (6) liquidated damages; (7) prejudgment and post-judgment interest; and (8) attorneys' fees and costs.

4.      Defendants further discriminated and retaliated against Plaintiff under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and state and city law, for being a Moldovan, Russian-speaking man with a disability, and for Plaintiff engaging in protected activity under the law, such as opposing unlawful discrimination against others in the workplace.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the FLSA, 29 U.S.C. §216 and 28 U.S.C. §1331, and has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 & 2202.

8.      On or around January 10, 2024, Plaintiff dual filed his charge with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights.

9.      On or around June 10, 2024, Plaintiff received the EEOC's Right to Sue Letter in reference to his EEOC charge.

10.     Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the EEOC's Right to Sue Letter.

## THE PARTIES

11.     Plaintiff MODNY ("MODNY") residing in Flushing, New York, was employed by the Defendant FOLEY HOAG, from in or around  July 11, 2022 until on or about June 2, 2024.

12.     Defendant FOLEY HOAG LLP  ("FOLEY HOAG") is a Foreign Limited Liability Partnership organized under the laws of New York with a principal office in Boston, Massachusetts, and New York location at located at 1301 6th Ave, New York, NY 10019.

13.     Defendant FOLEY HOAG is a corporation authorized to do business under the laws of New York and conducts business throughout all five boroughs of New York City and the greater New York area.

14.     Upon information and belief, Defendant GARY LESHINSKI, ( "LESHINSKI") is a resident of Massachusetts. Defendant LESHINSKI does business in this judicial district in New York State and has exercised control over Plaintiff's schedule, hours, pay, duties, and working conditions and exercised the right to hire and fire plaintiff at FOLEY HOAG.

15.     At all times material, Defendant LESHINSKI served as the Associate Director of Information Technology at FOLEY HOAG.

16.     Each Defendant jointly and severally employed Plaintiff at all times relevant to this complaint. Each Defendant has had, individually and jointly, substantial control over Plaintiff's wages, hours and working conditions.

## COLLECTIVE ACTION ALLEGATIONS

17.    Plaintiff bring his FLSA claims on behalf of himself and similarly situated employees (i.e., Support Technicians, Information Technology ("IT") employees, and other support staff) who are, or have been employed by Defendants in the three years preceding the filing of this Action.

18.    The members of the FLSA collective have been victims of Defendants' common policies and practices which have denied Plaintiff and the collective of wages and overtime.

19.    The FLSA Collective consists of Support Technicians, IT Group employees, Network Group employees, and other support staff who during their employment with Defendants, fell into the category of "hourly employees." Plaintiffs were Defendants' employees within the meaning of the FLSA, 29 U.S.C. § 203 and New York Labor Law § 190 et seq. ("NYLL").

20.    Upon information and belief, based on information provided by Plaintiff, as an employee of Defendant FOLEY HOAG, is an enterprise whose annual gross volume of sales made, or business done, is in excess of $1,000,000. Specifically, FOLEY HOAG is a law firm that provides legal service to public and private clients in a wide range of disputes and transactions worldwide. It offers regional, national, and international legal services. The organization relies on support staff— like Information Technology ("IT") employees— to assist attorneys in the firm. As such, based on Plaintiff's personal knowledge of Defendants' business, as well as upon information and belief, Defendants are an enterprise engaged in commerce as defined by 29 U.S.C. §203.

21.    Defendants failed to pay Plaintiff—who was a covered employee under the FLSA— for all of his hours worked according to the FLSA.

22.    During the relevant times herein, FOLEY HOAG treated Plaintiff as an hourly employee and paid the Plaintiff with a W-2.

23.     During the relevant times herein, FOLEY HOAG exercised control over the means by which Plaintiff's work was carried out, exercised control over Plaintiff's hourly pay, and exercised a significant level of control over the Plaintiff's regular work activities.

24.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiff and the FLSA collective by engaging in a pattern, practice and policy of violating the FLSA. This pattern, practice and policy includes: a. Depriving workers of earned wages for all of their time engaged in work; b. Depriving workers of overtime pay; c. Improperly taking deducting meal breaks from workers' wages; and d. Failing to make timely payments of wages.

25.     Defendants have engaged in unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees' compensation by willfully and knowingly violating the FLSA.

26.     The FLSA collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join this action.

27.     The identities of these similarly situated employees are or should be known to Defendants and are locatable through Defendants' business records.

## FACTUAL ALLEGATIONS

28.     MODNY is a Moldovan man who speaks Russian and has a Russian accent, as he grew up in the former Union of Soviet Socialist Republics ("USSR"), which later became the Republic of Moldova.

29.     MODNY has a long history of working for the county's top law firms, in IT matters.

30.     On or about July 11, 2022, Defendants hired MODNY as a W-2 employee to work as a Support Technician in their New York office.

31.    Throughout MODNY's employment, he worked diligently, often putting in long hours, before or after normal business hours and on weekends. This effort was needed as Defendants recently expanded their New York City office and the growing office required set up at a foundational level, equipment and systems for new employees, and constant attention to issues which required overtime. Moreover, due to the natural needs of a large law firm, such as preparing and takedown of technology for depositions, meetings, and other events required him to be at work long hours. By way of example, clocking in before 9 AM and/or staying after hours until 11 PM when necessary.

32.    For roughly the first two months of MODNY's employment, Defendants reported and compensated him with part of his overtime pay but, occasionally his supervisors wrongfully denied overtime.

33.    According to Defendants' pay statements for MODNY, the only two instances of Defendants reporting overtime were:

- From July 11, 2022 to July 24, 2022, MODNY worked a total of 75 "regular" hours at a stated "rate" of $3,653.85, totaling $3,653.85, and total of 3.5 "overtime" hours at a stated "rate" of $73.08, totaling $255.78, totaling $3,909.63.

- From August 22, 2022 to September 4, 2022, MODNY worked a total of 75 "regular" hours at a stated "rate" of $3,653.85, totaling $3,653.85, and total of 11.5 "overtime" hours at a stated "rate" of $73.08, totaling $840.42, totaling $4,494.27.

34.    At all material times, MODNY normally needed to work throughout his meal break or skipped his meal, resulting in him not being completely relieved of all work duties.

35.    Despite Defendants knowledge and MODNY informing Defendants that he normally worked through his meal break, skipping his meal, and/or remaining on call onsite, Defendants continued to automatically deduct 30 minutes each day.

36.    As such, each week, MODNY was not paid any additional straight or overtime (at the appropriate rate of time-and-a-half) for these additional hours of work during his meal break and his pay statements were inaccurate.

37.    On or around August 29, 2022, Defendants instructed MODNY to continue working beyond 40 hours per week <u>without</u> reporting overtime hours, proposing instead that it be considered as "comp time" or "compensation time" rather than wages and he could use that accrued time as additional medical leave or miscellaneous leave.

38.    At all material times, Defendants' management including Associate Director of Information Technology LESHINSKI, Regional IT Manager PETER HAKIM, and Director of Information Technology EUGENE STINE would instruct MODNY to work beyond 40 hours per week to meet the firm's needs and knew that MODNY was working overtime but not reporting the hours as he was under the belief he was receiving "compensation time" rather than wages.

39.    For approximately one-year MODNY complied with Defendants' directive of not reporting his overtime hours as overtime, until Defendants told him he could not use his accrued "compensation time" when he needed it, as he was previously instructed.

40.    In or around October and November of 2022, MODNY observed his supervisor, Director LESHINSKI and other employees unlawfully targeting a coworker in the IT department ("RG") for termination because of the employee's disability.

41.    RG suffered from a known heart condition, and MODNY witnessed instances where Director LESHINSKI would mock RG by pounding his chest and saying, "**I'M IN PAIN**!"

42.    Concerned for his coworker's well-being, MODNY politely asked Director LESHINSKI to stop harassing RG, explaining that RG was genuinely experiencing pain and difficulty breathing at times during the workday.

43.    MODNY's opposition to Director LESHINSKI agitated the supervisor.

44.    In or around November 16, 2022, Defendants' partner STEVE YANGER made offensive remarks about Russians and Russian hackers in the office.

45.    The hostile comments deeply offended MODNY, who grew up in the former USSR and has common Russian ancestry. MODNY felt threatened and offended by the offensive Russian comments, as he was commonly assumed be from Russia as he spoke Russian, had a Russian accent, and was indeed from the former-USSR.

46.    As such, MODNY promptly reported YANGER's comments to the Defendants' management. Following his complaint, Defendants rebuked YANGER, based on his complaint.

47.    This led to certain Defendants' employees making threatening remarks about MODNY for advocating his rights and opposing the unlawful discrimination.

48.    In or around mid-November 2022, during a meeting discussing technology upgrades with MODNY present, Director LESHINSKI made an offensive ageist comment about two firm partners, ANDREW SCHWARTZ and PETER ROSENBLUM, who are believed to be in their 60s or 70s.

49.    After, Defendants investigated the agist comments, with HR interviewing MODNY as he was present. MODNY confirmed that Director LESHINSKI had made the ageist remark.

50.    In or around January 2023, MODNY met Defendants' COO Diane Scheffler, who informed him that Director LESHINSKI had "**LOTS OF COMPLAINTS**" against him and was considered "**DIFFICULT TO WORK WITH**."

51.    MODNY understood COO Scheffler's comments to mean that Defendants knew about Director LESHINSKI's history of engaging in other unlawful and/or discriminatory conduct for some time.

52.    Upon MODNY's observation, Defendants were not taking the necessary steps to stop his continued unlawful conduct from occurring in the workplace and Director LESHINSKI was not properly trained in antidiscrimination and antiretaliation procedures.

53.    Later, in or around February 2023, Director LESHINSKI and Regional IT Manager HAKIM approached MODNY, pressuring him to provide negative information that Defendants could use to justify terminating RG.

54.    MODNY opposed terminating RG and refused to participate in their discriminatory plot, believing RG to be a competent and responsible worker, which agitated Director LESHINSKI and Regional IT Manager HAKIM.

55.    MODNY noted that Defendants did not make any efforts to accommodate RG's disability and soon after, Defendants terminated RG because of his disability.

56.    On or about March 15, 2023, Defendants sent MODNY an email referencing Russia in a negative manner, which MODNY reasonably believed was further harassment or retaliation. As such, MODNY emailed management, voicing his concerns about continued discrimination and retaliation.

57.    In response to MODNY's complaint of further harassment, Defendants—including Director LESHINSKI and the Human Resources department—instructed MODNY to stop complaining of discrimination.

58.    Thereafter, Defendants increased adverse actions towards MODNY in response to MODNY's protected activity. Before MODNY's complaint, Director LESHINSKI praised his work and promised MODNY a promotion on several instances. But after the protected activity, Director LESHINSKI began making critical comments regarding MODNY's legally protected activity, changed his duties, gave him the work of other employees, deprived him of critical resources, developed a dismissive attitude, and created biased negative evaluations of his work.

9

59.     Although MODNY was more than qualified for the position and already preforming many of the duties, Defendants forbid him to apply an interview for the role. Specifically, Director LESHINSKI flatly denied MODNY a promotion to the open position of Senior Support Technician with a salary range over $20,000 more than his current rate. Ultimately another individual was hired, with significantly less experience, as that employee did not engage in protected activity.

60.     When he asked for a reason why MODNY could not apply, Director LESHINSKI told MODNY, "**THIS IS YOUR JOB**," and refused to provide more information.

61.     HR refused to assist MODNY with his complaints of retaliation by Director LESHINSKI.

62.     On or about March 21, 2023, MODNY made further complaints to Defendants explaining he had been targeted in retaliation by Director LESHINSKI, retaliatory denial of the promotion opportunity, and Defendants for his earlier protected activity.

63.     Both HR and Director LESHINSKI pressured MODNY to stop complaining of retaliation and other unlawful acts in the workplace and accused him of being overly sensitive.

64.     When MODNY would not retract his complaint or stop requesting the opportunity to apply for the promotion, Director LESHINSKI only increased his adverse actions against MODNY, including weighing him down with more work that was not in his job duties. By way of example, he continuedly directed MODNY to climb an unsafe rickety wooden ladder and restart networking systems in the ceiling due to internet issues. The internet network issues fell under the duties of the Network Group (which catered to internet services) of Defendants, which meant the task was outside his duties. Additionally, Defendants did not even supply MODNY with assistance or the proper tools to fix the problem.

65.     On numerous occasions between April to June 2023, MODNY continued to complain to HR and Supervisor LESHINSKI that the ladder was unsafe, outside his normal duties, and he did not have the tools to resolve the networking issue.

66.     When MODNY would refuse to climb the unsafe ladder for safety reasons, Defendants would write him up and used his opposition to climb the ladder as a reason to deny him promotions.

67.     Throughout March to May of 2023, Defendants continued to fail to help MODNY, the retaliation and hostile comments by Director LESHINSKI and others in management continued.

68.     MODNY believed intervention was futile as Defendants continued to side with Director LESHINSKI.

69.     Throughout the May 2023, tensions grew, and multiple staffing shortages resulted in delays in MODNY's department. Rather than divide the work evenly amongst the staff, supervisors added the work of other employees in various technology departments onto MODNY and deflected responsibility for any issues by blaming MODNY. By way of example, when MODNY asked for equity, Audio Video Supervisor JESSY MURPHY told him, "**I DO NOT GIVE A FUCK ABOUT ANY OTHER DEPARTMENTS**," and denied assistance.

70.     The helplessness, anxiety and emotional toll on MODNY grew to the point it affected his mental health daily, rendering him a qualified person with a disability.

71.     Amongst other medical difficulties from their harassment, MODNY developed difficulties sleeping, depression, and persistent anxiety regarding work and fears of Defendants unjustly terminating him.

72.     At all material times, as a qualified employee with a disability under the ADA, Plaintiff could have performed the essential job duties of his position had Defendant provided him

with temporary leave to recover or to attend treatment, among other possible reasonable accommodations.

73.    Due to his worsening medical condition, on or around May 19, 2023, MODNY requested several days off from work for treatment related to his disability.

74.    MODNY made a medical accommodation request to HR, but Defendants unreasonably delayed in providing any accommodation.

75.    On or about May 23, 2023, MODNY requested accommodations of time off for treatment to Director LESHINSKI, mentioning how he could use his accrued "compensation time" as he understood he accumulated so time much from working overtime over the past year.

76.    In response to MODNY's request, Director LESHINSKI reversed his earlier stance and told him, "**THERE WAS NO POLICY**," for using accrued overtime as "compensation time" anymore, and he denied MONDY's request for any time out of the office.

77.    MODNY understood Director LESHINSKI refused his disability accommodation request and denied him his overtime pay because he wanted to punish MODNY for his complaints to HR and opposition to unlawful conduct.

78.    On or about May 26, 2023, MODNY emailed Defendants about his owed overtime pay complaining in writing about him routinely working late and management demanding he work off-the-clock as "compensation time" rather than over time

79.    In this email, MODNY further begged for Defendants' assistance related to his medical condition that would, "require lots of money and time for the treatments, medication and appointments," in addition to his overtime compensation to help pay for treatment.

80.    Despite notice, Defendants were unreasonably slow in responding to MODNY's requests and failed to provide any reasonable accommodations, or otherwise engage in the interactive process of finding a reasonable accommodation for MODNY.

81. MODNY's above protected activity in May 2023, resulted in Defendants increasing their adverse actions towards him in the workplace, such as increased duties and lack of assistance which caused a physical danger and emotional harm to MODNY.

82. On or about June 2, 2023, Defendants again demanded MODNY climb the unsafe ladder to fix an issue in the ceiling which was outside of his job scope or face reprimand and/or termination.

83. As a result of Defendants deliberate subjection of MODNY to dangerous working conditions, MODNY was severely injured after falling off a ladder at the office.

84. MODNY suffered a concussion, traumatic brain injuries, back issues, and other injuries that required three days of hospitalization and months of treatment. In addition to ongoing physical and psychological pain and suffering.

85. MODNY's fall was a natural, direct, and foreseeable consequence of Defendants' retaliation as Defendants continued to force MODNY to carry out the duties outside the scope of his duties and use the dangerous ladder to fix issues in the ceiling. These were the same unsafe conditions, which MODNY had complained of for months.

86. Soon after MODNY's physical injuries, Defendants effectively terminated him by withdrawing his access to the physical and virtual workplace, and work communications.

87. The debilitating injuries MODNY suffered because of Defendants' unlawful conduct and exposure to unsafe working conditions, and being locked out of the workplace has effectively rendered MODNY terminated.

88. For many weeks, Plaintiff MODNY attempted to resolve these pay and overtime issues to no avail.

89. Defendants have not made a good faith effort to comply with the FLSA and NYLL with respect to Plaintiff's compensation.

90.    As a Support Technician, Plaintiff was paid $48.72 per hour regular pay, and $73.08 per hour for his time over 40 hours per week, as overtime pay.

91.    In addition to his regular schedule in the workplace, Plaintiff often worked before or after is regular schedule, and on the weekends to meet Defendants requirements. Thus, Plaintiff ended up working a total of 53 hours every week on average. Plaintiff did not take any bona fide lunch periods.

92.    On average, Plaintiff worked a total of 13 overtime hours every week. Nevertheless, Defendants paid Plaintiff only paid him a fraction of his owed overtime on two paychecks.

93.    Plaintiff's good faith estimate of unpaid wages are as follows:

*Please note that these amounts are based on a preliminary calculation and that these figures could be subject to modification as new evidence could dictate plus Plaintiff is requesting liquated damages, costs and attorney fees.

a. Total amount of alleged unpaid wages:    $ 49,304.64

b. Calculation of such wages:

   Total relevant weeks of employment: 46 weeks
   Total hours worked: 53 hours weekly
   Total Overtime hours: 13 O/T hours
   Paid O/T hours: 0 hours weekly

   Total number of unpaid O/T hours weekly: 13 O/T hours
   Paid $48.72 an hour or O/T rate of $73.08 an hour
   [13 O/T hours] X [O/T rate of $73.08] X [46 weeks] = $ 43,701.84

   Total number of unpaid lunch hours weekly: 2.5
   Paid $48.72 an hour
   [2.5 regular hours] X [regular rate of $48.72] X [46 weeks] = $ 5,602.80

c. Nature of wages (e.g. overtime or regular time):

   $ 43,701.84 represents the unpaid overtime.
   $ 5,602.80 represents the unaccounted regular time.

94.    The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendants' subjected MODNY.

95.    Defendant LESHINSKI held supervisory authority over Plaintiff with regard to his employment.

96.    Plaintiff claims a continuous practice of discrimination, retaliation and violations under the FLSA, NY state and NYC law, and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

97.    Plaintiff further claims constructive and/or actual discharge to the extent Plaintiff is terminated from Plaintiff's position as a result of the unlawful discrimination and retaliation.

98.    Plaintiff claims constructive and/or actual discharge and also seeks reinstatement.

99.    Defendants did not have a reasonable objective belief that they were not required to pay Plaintiff's regular pay and overtime.

100.    As a result of Defendants' actions, MODNY felt extremely humiliated, degraded, victimized, embarrassed, anxious, and emotionally distressed.

101.    As a result of Defendants' discriminatory and intolerable treatment, MODNY suffered and continues to suffer severe emotional distress and physical ailments.

102.    Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

103.    As a result of the acts and conduct complained of herein, MODNY has suffered and will continue to suffer the loss of income, overtime, the loss of a salary, bonuses, benefits and other compensation which such employment entails. MODNY has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

104.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, MODNY demands Punitive Damages against all Defendants jointly and severally.

**COUNT I: FAILURE TO PAY WAGES**
**UNDER THE FLSA COMMON TO ALL PLAINTIFFS**

**(On Behalf of Plaintiff and the FLSA Collective Action, Against All Defendants)**

105.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

106.    Defendant FOLEY HOAG has been and remains employers engaged in interstate commerce under the FLSA, 29 USC 206 (a) and 207 (a).

107.    Defendant FOLEY HOAG was required to pay Plaintiff and similarly situated current and former employees as a non-exempt hourly employee for the time worked in any given work week under the overtime wage provisions set forth in the FLSA and under NYLL.

108.    At all material times, Plaintiff was paid with checks that did not reflect the real number of hours worked.

109.    The records, if any, concerning the number of hours actually worked by Plaintiff, and the compensation actually paid to such employees should be in the possession and custody of Defendants. Nevertheless, upon information and belief, Defendants did not maintain accurate and complete time records of hours worked by Plaintiff and other employees in the asserted class.

110.    Plaintiff complained to Defendants about the unpaid overtime hours, specially that he was instructed by his supervisors to work overtime but not report the overtime, and that Defendants did not pay him for all his hours of work on the firm's behalf.

111.    Despite Defendants knowledge of Plaintiff working overtime, Defendants refused to pay Plaintiff for all of his hours worked and overtime pay.

112.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff full compensation for the hours Plaintiff worked and denying earned overtime wages.

113.    At all times material hereto, the Employers i.e. all Defendants, failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Plaintiff performed services and worked in excess of the maximum hours provided by the Act but no provision was

made by the Defendants to properly pay their employees at the rate of time and one half for all hours worked in excess of forty hours (40) per workweek.

114.    Defendants knew and/or showed reckless disregard of the provisions of the FLSA concerning the payment of overtime wages as required by the FLSA and remains owing Plaintiff these overtime wages since the commencement of Plaintiff employment with Defendants as set forth above, and Plaintiff is entitled to recover double damages.

115.    At the times mentioned, individual Defendant LESHINSKI was the Director of Corporate Defendant FOLEY HOAG. Individual Defendant LESHINSKI had operational control of the Corporate Defendant, as he determined Plaintiff's employment terms and conditions, and he is jointly liable for Plaintiff's damages. Individual Defendant LESHINSKI was the employer of Plaintiff within the meaning of Section 3(d) of the FLSA [29 U.S.C. § 203(d)], in that this individual Defendant acted directly in the interest of Corporate Defendant in relation to the employees including Plaintiff and is jointly liable for Plaintiff's damages.

116.    Defendants willfully and intentionally refused to pay Plaintiff overtime wages as required by the law of the United States and remain owing Plaintiff these overtime wages since the commencement of Plaintiff's employment, as set forth above.

117.    Plaintiff has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

### COUNT II: RETALIATION
### UNDER THE FLSA COMMON TO ALL PLAINTIFFS
### (On Behalf of Plaintiff and the FLSA Collective Action, Against All Defendants)

118.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

119.    In relevant part, under § 215 (a)(3) of the FLSA, Prohibit Acts, it is unlawful for an employer, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or

related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

120.    Plaintiff did file complaints both orally and in writing regarding unpaid wages and overtime.

121.    After filing such complaints, Defendant FOLEY HOAG continued to withhold wages and/or unreasonably delay payments of Plaintiff.

122.    After filing such complaints, Defendant FOLEY HOAG subjected the Plaintiff to adverse actions, including but not limited to forcing Plaintiff to work to work under dangerous conditions, increased scrutiny, and denying him rights that other employes enjoyed.

123.    As a result of Defendants' continued retaliation, Plaintiff was forced from his employment with the Defendant FOLEY HOAG because he was physically injured, and Defendants withdrew his access to the workplace.

124.    Plaintiff was retaliated against for his good faith and statutorily protected act of complaining about unpaid wages.

125.    As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff is entitled to recover from Defendants unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## COUNT III: DISCRIMINATION UNDER TITLE VII
### (Against Defendant Foley Hoag)

126.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

127.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

128.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of his race/ethnicity and national origin, together with subjecting Plaintiff to race/ethnicity and national origin harassment and causing a hostile work environment based on the same.

129.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### COUNT IV: RETALIATION UNDER TITLE VII
**(Against Defendant Foley Hoag)**

130.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

131.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

132.    Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants, including but not limited to denying a promotion, failing to provide him the assistance and promised leave, increasing his duties, and forcing him to work in dangerous conditions.

133.    Defendant violated the above and Plaintiff suffered numerous damages as a result.

### COUNT V: DISABILITY DISCRIMINATION UNDER THE ADA
**(Against Defendant Foley Hoag)**

134.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

135.    The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the ADA, including failure to be promoted, increased scrutiny, and additional adverse actions.

136.    The discrimination to which Plaintiff was subjected was based on his disability and/or "perceived disability."

137.    At all material times, Plaintiff was a qualified person with a disability that affected his daily life in and out of the workplace, who could perform the essential functions of his position, with or without reasonable accommodations.

138.    The conduct of Defendant, its agents, and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

139.    The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

140.    Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADA.

### COUNT VI: FAILURE TO PROVIDE A REASONABLE ACCOMMODATIONS IN VIOLATION OF THE ADA
#### (Against Defendant Foley Hoag)

141.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

142.    The ADA requires an employer to engage in an interactive process to identify reasonable accommodations for an otherwise qualified employee with a disability.

143.   Defendant discriminated against Plaintiff in violation of the ADA when it failed to engage in the interactive process to identify and provide a reasonable accommodation for Plaintiff.

144.   Defendant's employment policies and practices are inherently discriminatory towards people with disabilities because they make no exceptions for accommodating employees in need of time off to recover from or treat a disability.

145.   Defendant violated the ADA when it refused to grant Plaintiff's request for a reasonable accommodation for his disability and failed to engage in the mandatory interactive process to provide a reasonable accommodation for Plaintiff's disability.

146.   At all material times, as a qualified employee with a disability, Plaintiff could have performed the essential job duties of his position had Defendant provided him with temporary leave to recover or to attend treatment, among other possible reasonable accommodations.

147.   As a direct and proximate consequence of Defendant's failure to accommodate his disability, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

148.   Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages.

149.   Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADA.

## COUNT VII: RETALIATION IN VIOLATION OF THE ADA
### (Against Defendant Foley Hoag)

150.   Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

151.   Plaintiff exercised his protected rights under the ADA when he requested a reasonable accommodation for his disability and complained about discrimination unlawful under the ADA.

152.     Plaintiff further exercised his protected rights under the ADA when he complained of Defendants harassing other employees with disabilities.

153.     Plaintiff could have performed the essential job duties of his position had Defendant provided him with temporary leave to recover or to attend treatment, among other possible reasonable accommodations.

154.     Although not an exhaustive list, Defendant retaliated against Plaintiff when it failed to promote him, provide him the assistance he once had, failed to provide him once promised leave, forced him to work in dangerous conditions, gave him duties of other employees, and ignored his requests for assistance in response to his requests for reasonable accommodations and complaints about discrimination unlawful under the ADA.

155.     As a direct and proximate consequence of Defendant ADA retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

156.     Defendant discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

157.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADA.

### COUNT VIII: INTERFERENCE IN VIOLATION OF THE ADA
#### (Against Defendant Foley Hoag)

158.      Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

159.     The ADA provides that an employer may not "coerce, intimidate, threaten, or interfere with" an employee's exercise of their rights under the ADA or on account of the employee's having exercised their rights under the ADA.

160.    Plaintiff exercised his protected rights under the ADA when he requested a reasonable accommodation for his disability.

161.    Plaintiff could have performed the essential job duties of his position had Defendant provided him with short-term disability leave, among other possible reasonable accommodations.

162.    Defendant violated the ADA when it interfered with Plaintiff's exercise of his ADA-protected rights by its acts that include but are not limited to reprimanding him, failing to provide him the assistance he once had and promised leave, giving him duties of other employees or dangerous tasks, ignored his requests for assistance, telling him to stop engaging in protected activity,  and forcing him to choose between his health and his job because of his requests for reasonable accommodations.

163.    As a direct and proximate consequence of Defendant's ADA interference, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

164.    Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

165.    Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADA.

### COUNT IX: NY § 195(1) WAGE NOTICE VIOLATION
#### (Against All Defendants)

166.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

167.    Pursuant to Section 195(1) of the NYLL, an employer is required to provide its employees, at the time of hiring, in writing in English and in the language identified by each employee as the primary language of such employee, a notice containing information such as,

… the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any claimed as part of the minimum wage, including tip, meal or lodging allowances; the regular pay day designated by the employer . . .; the name of the employer [;]. . . . [f]or all employees who are not exempt from overtime compensation . . ., the notice must state the regular hourly rate and overtime rate of pay.

168.    Pursuant to Section 198(1-b) of the NYLL, an employee that does not receive a wage notification, as required by NYLL § 195(1), may bring a civil action to recover damages of $50 for each workday that the violation occurs or continues to occur, but not to exceed $5,000.

169.    During certain periods of Plaintiff's employment, Defendants did not provide Plaintiff with a wage notification informing Plaintiff of, among other things, (1) accurate regular rate of pay, (2) the basis of their rate of pay (e.g., whether they were paid by the hour, shift, or day), (3) overtime rate of pay, or (4) the regular pay day designated by Defendants.

170.    Defendants did not provide proper wage notifications to Plaintiff.

171.    Defendants violated NYLL § 195(1) by failing to provide Plaintiff with wage notifications containing the information required by NYLL § 195, et seq.

172.    Defendants' failure to provide Plaintiff with proper wage notifications in violation of NYLL § 195(1) was willful.

173.    As a result of Defendants' unlawful acts, Plaintiff has been deprived of the appropriate wage notices, and Defendants are liable to Plaintiff in the statutory amounts, plus attorney's fees, costs and any other damages permitted under the NYLL.

## COUNT X: NY § 195(3) WAGE STATEMENT VIOLATION
### (Against All Defendants)

174.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

175.    Pursuant to Section 195(3) of the New York Labor Law, every employer shall furnish each employee with a statement with every payment of wages that identifies, among other things, "the dates of work covered by that payment of wages; name of employee; name of employer address

and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For employees who are not exempt from overtime compensation . . . the statement shall the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

176.    Pursuant to Section 198(1-d) of the New York Labor Law, an employee that does not receive a wage statement, as required by NYLL § 195(3), may bring a civil action to recover damages of $250 for each workday that the violation occurs or continues to occur, but not to exceed $5,000.

177.    Defendants did not furnish Plaintiff with accurate wage statements during their employment.

178.    Defendants violated NYLL § 195(3) by failing to provide Plaintiff with wage statements containing the information required by NYLL § 195(3).

179.    Defendants' repeated failure to provide Plaintiff with wage statements in violation of NYLL § 195 was willful.

180.    As a result of Defendants' unlawful acts, Plaintiff has been deprived of the appropriate wage statements, and Defendants are liable to Plaintiff in the statutory amounts, plus attorney's fees, costs and any other damages permitted under the NYLL.

## COUNT XI: NYSHRL DISCRIMINATION
### (Against All Defendants)

181.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

182.    New York State Executive Law § 296 provides that:

1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

183.    Defendants violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of his race/ethnicity, national origin and disability together with subjecting Plaintiff to race/ethnicity, national origin, and disability harassment, and causing a hostile work environment based on the same.

184.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

185.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### COUNT XII: NYSHRL RETALIATION
**(Against All Defendants)**

186.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

187.     Pursuant to the NYSHRL, Executive Law § 296(7):

[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceedings under the article.

188.    Plaintiff engaged in protected activity under the NYSHRL by participating in investigations into unlawful conduct and by opposing discriminatory and harassing conduct that would constitute a violation of NYSHRL, Executive Law § 296 et seq.

189.    Defendants were aware of Plaintiff's protected activity.

190.    Defendants undertook an adverse employment action against Plaintiff that include but is not limited to reprimanding him unjustifiably, failing to promote him, failing to provide him the assistance he once had and promised leave, giving him duties of other employees or dangerous tasks, ignored his requests for assistance, and directing him to stop engaging in protected activity.

191.    Defendants' adverse employment action was taken against Plaintiff because he expressed their unhappiness and opposed of the discriminatory and harassing treatment that he and other employees were exposed to.

192.    Defendants' conduct was done in conscious disregard of Plaintiff's rights.

193.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### COUNT XIII: AIDING AND ABETTING UNDER NY STATE LAW
**(Against All Defendants)**

194.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

195.    New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

196.    Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

197.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law.

198.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### COUNT XIV: NYSHRL HOSTILE WORK ENVIRONMENT
**(Against All Defendants)**

199.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

200.    Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment on the basis of Plaintiff's opposition, ethnicity, national origin, and disability in violation of § 296(1)(a) of the NYSHRL.

201.    As stated above, Defendants subjected Plaintiff to a work environment that was permeated with discriminatory intimidation, ridicule, and insult that any reasonable person would

perceive—and Plaintiff did perceive—as sufficiently severe and pervasive to alter the conditions of his employment and create an abusive working environment.

202.    Defendants' constant negative treatment of Plaintiff and regular barrage of discriminatory insults were not mere utterances or stray remarks but were severe and pervasive.

203.    As a result of the foregoing, Plaintiff suffered materially adverse treatment in the terms and conditions of his employment.

204.    The adverse, derogatory, and discriminatory treatment and ridicule that Plaintiff regularly endured negatively impacted his work environment and psychological well-being.

205.    As a proximate result of Defendants' harassment and discrimination, Plaintiff suffered numerous damages as a result.

## COUNT XV: NYCHRL DISCRIMINATION
### (Against All Defendants)

206.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

207.    The NYCHRL, Admin. Code § 8-107 [1] provides that:

It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

208.    Defendants engaged in an unlawful discriminatory practice in violation of the NYCHRL, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's race/ethnicity, national origin, and disability together with subjecting Plaintiff to race/ethnicity, national origin, and disability harassment, and causing a hostile work environment based on the same.

209.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the NYCHRL.

210.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## COUNT XVI:  NYCHRL RETALIATION
### (Against All Defendants)

211.    Plaintiff repeats and re-alleges the allegations set forth above.

212.    Pursuant to the NYCHRL, Admin. Code § 8-107(7):

[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.

213.    Plaintiff engaged in protected activity under the NYCHRL by participating in an investigation related to discrimination, opposing discriminatory and harassing conduct that would constitute a violation of NYCHRL, Admin. Code § 8-107et seq.

214.    Upon information and belief, Defendants were aware of Plaintiff's protected activity and undertook adverse employment actions against Plaintiff in disregard of Plaintiff's rights.

215.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## COUNT XVII:  NYCHRL AIDING AND ABETTING
### (Against All Defendants)

216.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

217.    NYCHRL, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

218.    Defendants engaged in an unlawful discriminatory practice in violation of NYCHRL, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

219.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of NYC Administrative Code.

220.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### COUNT XVIII: NYCHRL INTERFERENCE
**(Against All Defendants)**

221.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

222.    NYCHRL, §8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

223.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### COUNT XIX: NYCHRL DISCRIMINATION LIABILITY
**(Against All Defendants)**

224.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

225.    NYCHRL, §8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who

exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

226.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## COUNT XX:  NYCHRL HOSTILE WORK ENVIRONMENT
### (Against All Defendants)

227.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

228.    Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment on the basis of Plaintiff's ethnicity, national origin, and disability in violation of § 8- 107(1)(a) of the NYCHRL.

229.    Defendants' constant negative treatment of Plaintiff and regular barrage of discriminatory insults were not mere utterances or stray remarks but were severe and frequent.

230.    As a result of the foregoing, Plaintiff suffered materially adverse treatment in the terms and conditions of his employment.

231.    The adverse, derogatory, and discriminatory treatment and ridicule that Plaintiff regularly endured negatively impacted his work environment and psychological well-being.

232.    As a proximate result of Defendants' harassment and discrimination, Plaintiff suffered numerous damages as a result.

## COUNT XXI: UNDER NY STATE LAW NEGLIGENCE
### (Against Defendant Foley Hoag)

233.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

234.    At all times material, Defendant FOLEY HOAG was negligent in the placement, retention, and supervision of the subject harasser, Defendant LESHINSKI, and continued to require Plaintiff work in unsafe conditions after receiving notice of a foreseeable danger to employees' safety.

235.    Defendant FOLEY HOAG owed Plaintiff a duty to provide Plaintiff with a reasonably safe environment.

236.    Defendants breached their duties to Plaintiff and as a result Plaintiff was damaged in an amount to be determined at the time of trial.

### COUNT XXII: NYLL WHISTLEBLOWER PROTECTIONS
### (Against Defendant Foley Hoag)

237.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

238.    NYLL § 740 provides protection from retaliation to current or former employees who 1) disclose or threaten to disclose to a supervisor or a public body an activity, policy or practice of the employer that violates a law, rule or regulation or creates a danger to public health and safety; 2) provide information to or testify before any public body conducting an investigation, inquiry into the employer's violation; or 3) object to or refuse to participate in the activity or policy that violate the law.

239.    Plaintiff engaged in protected activity reporting and opposing activity that he reasonably believed to be violations of law.

240.    Upon information and belief, Defendants were aware of Plaintiff's protected activity and undertook adverse employment actions against Plaintiff.

241.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that judgment be granted against Defendants, jointly and severally:

a.  Declaring Defendants' conduct complained herein to be in violation of the Plaintiff's rights under the FLSA, the NYLL and their regulations;

b.  Designation of Plaintiff as representatives of the FLSA Collective Plaintiff;

c.  Awarding Plaintiff unpaid overtime wages;

d.  Awarding Plaintiff unpaid minimum wages;

e.  Awarding Plaintiff damages for late payment of wages;

f.  Awarding Plaintiff statutory damages as a result of Defendants' failure to furnish
Plaintiff with accurate wage statements and a proper wage notice pursuant to the
NYLL and Wage Theft Prevention Act;

g.  Awarding Plaintiff liquidated damages in an amount equal to the total amount of the
wages found to be due pursuant to the FLSA and the NYLL;

h.  Awarding Plaintiff prejudgment and post-judgment interest under the FLSA, NYLL,
28 U.S.C. § 1961, ADA, Title VII, NYSHR, and NYCHRL;

i.  Awarding Plaintiff, the costs of this action together with reasonable attorneys' fees
pursuant to the FLSA, NYLL, ADA, Title VII, NYSHR, and NYCHRL;

j.  Awarding Plaintiff compensatory damages in an amount to be determined at trial;

k.  Awarding Plaintiff punitive damages in an amount to be determined at trial;

l.  Awarding attorneys fees for all causes of action; and

m.  Awarding such and further relief as this court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  July 24, 2023                          O'CONNELL LAW, PLLC

                                              /s/ Kelly L. O'Connell_____
                                              Kelly L. O'Connell, Esq.
                                              *ko@kellyoconnelllaw.com*
                                              O'Connell Law, PLLC
                                              175 S.W. 7th Street, Suite 2410
                                              Miami, Florida 33130
                                              Office: (305)209-9246

                                              *Attorneys for Plaintiff*